to collect, etc., "so much of the *streets* now *fronting upon the water* front" as may be so used without "obstructing the same as thoroughfares."

The case before us fails to show that the Gas Works (Potrero) Wharf constitutes any portion of a street or thoroughfare ending at or fronting on the water, but, on the contrary, that it is an isolated projection, which is approachable (except by water-craft) only from private property in the rear.

Judgment affirmed.

MYRICK, ROSS, and SHARPSTEIN, JJ., concurred.

THORNTON, J., dissented.

---

[No. 6,676.—In Bank.]
March 30, 1882.

THE PEOPLE OF THE STATE OF CALIFORNIA *v.* SAN FRANCISCO GAS LIGHT COMPANY.

HARBOR COMMISSIONERS—DOCKAGE—WHARVES—STREETS.—The State Harbor Commissioners have no power to collect dockage upon vessels lying at the Potrero Gas Works' wharf.

APPEAL from a judgment for the plaintiff in the Twelfth District Court of the City and County of San Francisco.

In the agreed case submitted (under § 1138, C. C. P.) the facts are stated as follows:

1. Defendant is a corporation, duly organized and now existing under the laws of the State of California.

2. The defendant, since the seventh day of March, 1873, has been engaged in the manufacture of illuminating gas, in the City and County of San Francisco, at a place known as "The Potrero Station of the San Francisco Gas Light Company Works."

3. A certain wharf, known as the Potrero Gas Works Wharf, situated on the Water Front street, was built by defendant, at its own expense, and used and kept in repair by defendant, at its own expense, since the seventh day of March, 1873, and

has, at all times been, and is now in possession of the defendant; and the dock, adjoining said wharf and connected therewith, has, at all times, been dredged by defendant, at its own expense.

4. Between the first day of October, 1876, and the last day of January, 1877, certain vessels occupied berths at said wharf.

5. Under the rates of dockages, established by the Board of State Harbor Commissioners for the Port of San Francisco, the amount chargeable against said vessels for the use of the said berths occupied by them, as aforesaid, was and is three hundred and twenty-four dollars and fifty cents.

6. The said amount of three hundred and twenty-four dollars and fifty cents dockage was, since the rate of dockage of said vessels was established and before the commencement of this agreed case, collected and received by defendant of and from the agents and owners of said vessels.

7. That no portion of said three hundred and twenty-four dollars and fifty cents has been paid to plaintiffs, or to the Board of State Harbor Commissioners.

8. Before the commencement of this agreed case, plaintiffs made demand on defendant for the said money so collected and received, as aforesaid.

9. If said wharf is within the jurisdiction of the Board of State Harbor Commissioners, for the purpose of collecting dockage and wharfage, then there is due from defendant to plaintiffs the said sum of three hundred and twenty-four dollars and fifty cents, the dockage of said vessels, as money had and received by defendant, to plaintiffs' use.

And upon these facts, the questions submitted for determination were:

1. Is the wharf, designated as "Potrero Gas Works Wharf," under the jurisdiction of the Board of State Harbor Commissioners?

2. Has the defendant the legal right to collect dockage for vessels occupying berths at said wharf?

3. Have the plaintiffs or the Board of State Harbor Commissioners the right to collect dockage from vessels occupying berths at said wharf?

4. Have the plaintiffs the legal right to the three hundred

and twenty-four dollars and fifty cents collected by defendant as aforesaid ?"

*Clement, Osment & Clement,* for Appellant.

This is an agreed case. The plaintiff seeks to recover dockage for vessels landing at the Potrero wharf.

Subdivision 3 of the agreed statement shows that the wharf in question was " built by defendant, and has been used and kept in repair by defendant at his own expense since the seventh day of March, 1873, and has at all times been, and is now, in the possession of the defendant, and that the dock adjoining said wharf, and connected therewith, has at all times been dredged by defendant at his own expense."

The only theory upon which the plaintiff bases its right to collect dockage from the defendant is that the wharf and dock in question are shown by the diagram to be upon a street known as "Water Front Street," and therefore they are under the jurisdiction of the Harbor Commissioners by virtue of §§ 2524 and 2525, Pol. Code; see Amendments of 1875-6, 36-51.

Sections 2524 and 2525 do not apply to this case. Section 2525 says: " The Board of State Harbor Commissioners are authorized to extend any of the streets, * * * to a width not exceeding one hundred and fifty feet where they are not already extended."

The word extend means to "construct," for the next sentence reads: " The outer half of such streets must be constructed or built * * * by the Harbor Commissioners * * * and may be used as a landing place or pier on which dockage, wharfage, and tolls may be collected. And until such extensions are made, the Commissioners may have and use as a landing place, etc., so much of the streets now fronting on the water front as may be used for such purpose without obstructing the same as a thoroughfare. The inner half of such streets to be constructed * * * by the owners of the lots abutting thereon."

Thus the streets over which Section 2525 gives the Harbor Commissioners jurisdiction are such streets as they may construct the outer half of; or, such other streets as can be used as a landing place or pier, etc., and these may only be used in

such a manner as not to interfere with such streets as "thoroughfares." Now, how can this section be extended to water streets, such as the premises in question are ?

A water street cannot be used as a landing place or pier, and it is only such streets as can be used for the purposes of a landing place or pier that Section 2525 gives the Commissioners the right to collect tolls for landing on.

The wharf of the Gas Light Company is not a street—nor a part of a street—nor was it constructed as such—nor is it contended that it was. It was built for the purpose of being used as a wharf, and the record shows that it is claimed as a wharf by the respondent.

Section 2524 of the Political Code as amended in 1875–6 contains the last established boundary of the water front of San Francisco, and defines the jurisdiction of the Harbor Commissioners. The section is very long. Hidden away in the middle of it is the following clause : "And said commissioners in addition to general control over said premises [to wit: From the harbor line, as established in this section, six hundred feet out into the bay] shall have authority to use for loading and landing merchandise with a right to collect dockage, wharfage and tolls thereon, such portion of the streets * * * ending or fronting upon the waters of the bay as may be used for such purposes without obstructing the same as thoroughfares," etc.

The above section (2524) defined the jurisdiction of the Harbor Commissioners as to collecting dockage, tolls and wharfage on streets from the date of its passage, February 28, 1876, down to April 3, 1876, at which date a new section was enacted by the Legislature which more specifically defined the jurisdiction of the Board as to collecting wharfage, dockage and tolls on streets.

The section which was adopted in April was Section 2525. (See Amendments of 1875–6, p. 51.)

Section 2525 (as will be readily seen) was intended by the Legislature as a substitute for that portion of Section 2524 above quoted. It makes clear, plain, distinct and specific the cases in which the Harbor Commissioners may collect wharfage, dockage and tolls on streets.

Section 2525 governs Section 2524 as being the last amendment, and the fullest and most specific Act on the subject.

*J. B. Lamar*, for Respondents.

Potrero Gas Works' wharf is within the jurisdiction of the Board of State Harbor Commissioners; and said Board has the exclusive right to collect dockage, wharfage and tolls thereat. (Political Code, Section 2524; Angel on Tide Waters, 192–218; *People* v. *Davidson*, 30 Cal. 379; *Dana* v. *Jackson Street Wharf Co.* 31 id. 118; Political Code, Sections 2522–5; *Gunter* v. *Geary*, 1 Cal. 462; *Cannon* v. *City of New Orleans*, 20 Wall. 577.)

The defendant is not only unauthorized to collect dockage at said wharf, but is positively forbidden. (Civil Code Sections 801, 802, 1654; *San Francisco* v. *Spring Valley Water Works*, 48 Cal. 493; Penal Code, Section 642.)

*W. W. Morrow*, for Respondents.

Since the briefs now on file in the above entitled cases were written and filed, this Court has decided the case of the *People* v. *San Francisco Gas Light Company*, 54 Cal. 248, and the case of *Soule et al.* v. *San Francisco Gas Light Company*, 54 id. 241. As it may be suggested that the Court in determining those cases has passed upon several questions involved in the cases now before the Court, it will be convenient to notice those cases and then restate the points still in controversy between the Board of State Harbor Commissioners and the San Francisco Gas Light Company. In the two decided cases the questions submitted to the Court turned mainly upon the proper construction of the terms of a lease which the Gas Light Company had from the Harbor Commissioners.

In the two cases now before the Court the questions involved relate also to dockage and tolls or wharfage on coal landed at a wharf built by the Gas Light Company at another point on the water front of San Francisco. But the wharf now in question was erected without the consent or permission of the Harbor Commissioners, and is being used without the sanction of a lease or other grant from the State

or the Board of the State Harbor Commissioners, and the claim of the Gas Light Company to exemption from wharfage and tolls is without merit other than that which arises from the mere fact that it has erected the wharf, keeps it in repair, and for its own convenience dredges the dock alongside the wharf.

It is respectfully submitted that this unlicensed occupation of the water front belonging to the State does not entitle the Gas Light Company to the benefits and profits of so valuable a franchise, and is clearly contrary to law. The water front line, as shown on the plats attached to the Transcript, is designated as having been established by the Tide Land Commissioners.

The first question is as to the authority of that Board to establish such a line. This is found in section four of the Act approved March 30, 1868 (Statutes of California, 1867–8, 717.) The establishment of the water front line was coupled with the express reservation that the State should have the right to collect dockage and wharfage along its entire length, and at every part of it.

This is in harmony with the well established principles of law on this subject. The State owns the shore. Such land is not susceptible of reclamation, and can be put to no useful purpose except in connection with a wharf or some other superstructure for commercial or navigation purposes. (*Taylor* v. *Underhill*, 40 Cal. 471; *Kimball* v. *MacPherson* 46 id. 103.)

The State has reserved the entire water front of San Francisco for commercial purposes, and for eighteen years it has been legislating in the line of a general system of improvement in behalf of commerce.

A part of this system includes the building of wharves and providing docks for the needs of shipping in this port, and to carry on this improvement it is necessary that the State, like a private owner, should collect wharfage and dockage for the use and occupation of its property.

The record discloses the fact that in 1873, or about five years after the passage of the Act authorizing the establishment of the water front as before stated, the Gas Light Com-

pany entered upon the lands of the State and erected this wharf at the Potrero.

The relation of this wharf so built, to the water front and the jurisdiction of the Harbor Commissioners, was and is precisely the same as the wharf at Berry street, and if in the latter case a lease was necessary to enable the Gas Light Company to have the convenience and exclusive use of such a structure, so it is also necessary at the Potrero. And if the value of the lease of the water front at Berry street was and is the building of the wharf by the lessee to be surrendered to the State at the end of the term, the keeping it in repair during the term and the payment of wharfage on all goods and merchandise landed on the wharf, then no less conditions should be the value of a like portion of the water front at the Potrero. It may therefore be well supposed that the Gas Light Company built the wharf at the Potrero with the full knowledge and understanding that under the statute wharfage would have to be paid to the State on all goods and merchandise landed on the wharf and dockage on all vessels occupying berths alongside of said wharf.

In the briefs on file, it is clearly shown that the wharf in question is within the jurisdiction of the Board of State Harbor Commissioners, and that said Board has the exclusive right to collect dockage, wharfage and tolls thereat. In addition to the authorities cited, I desire, however, to call the attention of the Court to the case of *The Potomac Steamboat Comqany et al.* v. *The Upper Steamboat Company,* decided recently in the Supreme Court of the District of Columbia. (8 Washington Law Reporter, 419.)

In the two cases now before the Court, the State is the original and only owner of the water front of San Francisco, and as such owner has the exclusive right to erect and maintain improvements thereon and collect wharfage and dockage for the use of the same. It is plain, therefore, that the Gas Light Company, having merely anticipated the improvements that are being made by the State along the water front in erecting a wharf for its own use and convenience, is subject to the law under which the Harbor Commissioners claim the right to collect dockage and wharfage thereat.

The COURT:

The State Harbor Commissioners had no power to collect dockage upon vessels lying at the Potrero Gas Works' Wharf. (*People* v. *S. F. G. L. Co.*, No. 6,667.)

Judgment reversed and cause remanded.

[No. 7,053.—Department One.]
April 1, 1882.

## HYAM JOSEPH v. MANUS DOUGHERTY ET AL.

EXECUTION OF MORTGAGE BY MARRIED WOMAN—ACKNOWLEDGMENT—COM-
PLAINT—FINDINGS.—In an action to foreclose a mortgage, the complaint alleged, and the Court found that the defendant, a married woman, "*made, executed, and delivered*" the instrument.

*Held*: The finding that the mortgage was "*executed*" imported that it was "*acknowledged.*"

APPEAL from a judgment for the plaintiff in the Twelfth District Court of the City and County of San Francisco. DAINGERFIELD, J.

*R. Percy Wright*, for Appellant.

The complaint does not state facts sufficient to constitute a cause of action against the defendant Ann Dougherty.

It appears on the face of the complaint that at the time it is alleged she executed the mortgage, Ann Dougherty was a married woman. The complaint does not contain any allegation that the defendant Ann Dougherty acknowledged the execution of the mortgage, nor is any copy of the mortgage annexed to the complaint. An allegation of the fact of acknowledgment is essential to the cause of action against her, inasmuch as upon the existence of that fact the validity of the mortgage depends. (C. C. § § 1093, 1181, 1186, 1187; *Hepburn* v. *Dubois*, 12 Pet. 374; *Jordan* v. *Corey*, 2 Ind. 385; *Jackson* v. *Stevens*, 16 Johns. 110.)

If the plaintiff relies on special circumstances to remove the disability of a married woman to make the contract sued upon, they must appear in his pleadings. (*Hardin* v. *Pelan*, 41 Miss. 112; *Nash* v. *Mitchell*, 71 N. Y. 199; *Leonis* v. *Lazzarovich*,